UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, by Attorney General Michelle A. Henry,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>EAGLE ROCK RESORT CO., LLC, et al.,<br><br>　　　　Defendants. | CIVIL ACTION NO. 3:25-cv-00059<br><br>(SAPORITO, J.) |

## <u>MEMORANDUM</u>

This is an action for declaratory, injunctive, and monetary relief under the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5536, the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1703, and the Unfair Trade Practices and Consumer Protection Law of Pennsylvania ("UTPCPL"), 73 P.S. § 201-3.

The Commonwealth of Pennsylvania brought this lawsuit to seek damages for and halt alleged unfair trade practices by defendants Eagle Rock Resort Co., United Equitable Mortgage Corp., Eagle Rock Real Estate Co., and Double Diamond-Delaware, Inc. In its complaint, the Commonwealth alleges that the defendants misled buyers about the

value of undeveloped lots at Eagle Rock Resort, a local land development. The Commonwealth seeks a declaratory judgment that the defendants' conduct was unlawful; a permanent injunction against violations of the CFPA, ILSA, and the UTPCPL by the defendants; and monetary relief in the form of civil penalties, restitution, and damages.

The defendants have moved to dismiss the complaint for lack of standing, under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted, under Fed. R. Civ. P. 12(b)(6). Doc. 7. The motion is fully briefed and ripe for disposition. Doc. 11; Doc. 17; Doc. 24.

## I.   BACKGROUND

Defendants Eagle Rock Resort Co., United Equitable Mortgage Corp., Eagle Rock Real Estate Co., and Double Diamond-Delaware, Inc. sell and provide financing for thousands of lots of undeveloped land at Eagle Rock Resort, a land development in rural Pennsylvania. The defendants allegedly engaged in a pattern of unfair trade practices by making misrepresentations to consumers seeking to purchase undeveloped lots. As a result, consumers are alleged to have bought land from the defendants at heavily inflated prices.

The defendants allegedly engaged in four primary unfair trade practices. First, the defendants showed consumers misleading "comparable properties" to justify exorbitant land prices. Second, the defendants implicitly represented to consumers that undeveloped lots would increase in value, even though the defendants knew that such an increase was highly unlikely. Third, the defendants told consumers that there was a resale and trade-in program for undeveloped lots without disclosing important limiting conditions. Fourth, the defendants told consumers that they were receiving a "limited time" deal and special "credit" on their purchase where the same promotion was provided to all buyers.

## II.   LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter

jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549

F.2d at 891. This case falls into the former category.

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required

to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.   DISCUSSION

### A. Standing

The defendants move to dismiss the complaint under Rule 12(b)(1), arguing that the Commonwealth lacks standing.

To establish Article III standing, a plaintiff in federal court must satisfy three elements. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The parties dispute only whether the Commonwealth has suffered an injury in fact. For the following reasons, we find that the Commonwealth has suffered an injury in fact and has standing under the

doctrine of *parens patriae*.[1]

*Parens patriae* standing is an exception to the typical rule that a state must allege injury to its proprietary or sovereign interests to establish an injury in fact. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982). To establish *parens patriae* standing, a state may instead plead injury to what are called "quasi-sovereign" interests. *Id.* at 601. Quasi-sovereign interests "consist of a set of interests that the State has in the well-being of its populace." *Id.* at 602.

There are two requirements that the Commonwealth must meet to invoke *parens patriae* standing. First, the Commonwealth must have an independent interest in this litigation. *Id.* at 607. Second, the Commonwealth must plead a proper quasi-sovereign interest under the law. *Id.*

First, the Commonwealth must have an independent interest in this litigation. In other words, the Commonwealth "must be more than a nominal party." *Id.*; *see also Louisiana v. Texas*, 176 U.S. 1, 16 (1900);

---

[1] The court thus need not address the fraught issue of whether states may invoke statutory standing following the Supreme Court's decisions in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 365 (3d Cir. 2015). The Commonwealth may not serve as a nominal plaintiff attempting to "pursue [private] interests only for the sake of the real party in interest." *Snapp*, 458 U.S. at 602.

Second, the Commonwealth must plead a proper quasi-sovereign interest under the law. The Supreme Court has suggested that one "helpful indication" of whether an injury implicates a quasi-sovereign interest "is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id.* at 607. The Supreme Court has also recognized two general categories of quasi-sovereign interests. First, a state has "a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Id.* at 607. Second, a state has "a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id.*

Under this second "well-being" quasi-sovereign interest, the state must allege injury to a "sufficiently substantial segment of its population." *Id.* In determining whether the State has met this numerosity requirement, "the indirect effects of the injury must be

- 8 -

considered . . . ." *Id.* The Supreme Court "has not attempted to draw any definitive limits on the proportion of the population of the State that must be adversely affected by the challenged behavior." *Id.*; *see also In re Hemingway*, 39 B.R. 619, 622 (N.D.N.Y. 1983) (holding that the numerosity requirement for *parens patriae* was satisfied where the state sought to represent six named consumers).

In this case, the Commonwealth meets both of the requirements to assert *parens patriae* standing. The Commonwealth has an independent interest in its claims, and it has alleged a proper quasi-sovereign interest in consumer protection.

### 1. *Independent Interest*

The Commonwealth meets the first requirement for parens patriae standing because it has an independent interest in its claims under the CFPA, ILSA, and the UTPCPL. It is not pursuing these claims as a nominal plaintiff for private parties.

First, the Commonwealth has an independent interest in its CFPA claims. Although neither party acknowledges this fact, the CFPA provides no private right of action. *See Ahmed v. Wells Fargo Bank, N.A.*, 432 F. Supp. 3d 556, 562 (E.D. Pa. 2020). The Commonwealth cannot be

a nominal or representative plaintiff where private citizens have no interest under the statute. Accordingly, the Commonwealth has an independent interest in its CFPA claims.

Second, the Commonwealth has an independent interest in its ILSA claim, as it is seeking relief that is unavailable to private parties.

Under ILSA, private parties are limited to damages, specific performance, and "such other relief as the court deems fair, just, and equitable." 15 U.S.C. § 1709(a). But ILSA expressly authorizes the Director of the CFPB to seek injunctions and civil money penalties. *See* 15 U.S.C. § 1714(a) (injunctions); *id.* § 1717a(a)(1) (civil money penalties). These remedies are not available to private plaintiffs under ILSA.

In this matter, the Commonwealth is seeking, *inter alia*, a permanent injunction and civil money penalties. The CFPA authorizes the Commonwealth to seek such relief. *See* 12 U.S.C. §§ 5552(a), 5565 (allowing the Commonwealth to seek civil money penalties and injunctions for violations of Federal consumer financial laws); *see also id.* § 5481(12)&(14) (defining "Federal consumer financial law" under the CFPA to include ILSA). Because the Commonwealth is seeking relief that private parties cannot pursue, it cannot be a nominal plaintiff. The

Commonwealth thus must have an independent interest in its ILSA claim.

Third, the Commonwealth has a similar independent interest in its UTPCPL claim because it is seeking relief that is unavailable to private parties.

Under the UTPCPL, private parties may seek only damages. See 73 P.S. § 201-9.2. The Commonwealth, by contrast, may seek a temporary or permanent injunction against violations of the statute. 73 P.S. § 201-4. As noted supra, the Commonwealth is seeking a permanent injunction against Defendants. Accordingly, the Commonwealth has an independent interest in its UTPCPL claim.[2]

The Commonwealth is also seeking damages under the UTPCPL

---

[2] The fact that the Commonwealth is seeking broad injunctive relief further indicates that the state has an independent interest in this action. See Wisconsin v. Abbot Labs., 341 F. Supp. 2d 1057, 1063 (W.D. Wil. 2004) ("This type of prospective relief goes beyond addressing the claims of previously injured organizations or Individuals. It is aimed at securing an honest marketplace . . .and advancing plaintiff's interest in the economic well-being of its residents."); Missouri ex rel. Webster v. Freedom Fin. Corp., 727 F. Supp. 1313, 1317 (W.D. Mo. 1987) ("The purpose of seeking this wide-ranging relief is more than to simply address the complaints of a few property owners. It is arguably an effort to ensure proper business practices in the buying and selling of so-called 'resort' properties and/or time-shares in and around the various lake areas of this State.").

- 11 -

and ILSA. At first glance, this would appear to suggest that the Commonwealth is acting as a nominal plaintiff for individual consumers, as any damages award would accrue to private parties.[3] *See, e.g.*, Def.'s Br. Supp. 10 (arguing that because private consumers can obtain "much of the relief" sought by the Commonwealth, the Commonwealth lacks *parens patriae* standing), Doc. 11. Indeed, in *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 449–50 (E.D. Pa. 2010), our sister court considered consumer protection claims brought by the State of West Virginia remedy by remedy, holding generally that a state has no quasi-sovereign interest in damages claims on behalf of consumers. *Id.* at 449–50. This analysis was conducted in the context of determining the real party in interest under the Class Action Fairness

---

[3] In this vein, the parties in their briefs argue over the characterization of *Pennsylvania ex rel. Sheppard v. National Ass'n of Flood Insurers*, 520 F.2d 11 (3d Cir. 1975), and *Commonwealth v. Porter*, 659 F.2d 306 (3d Cir. 1981) (en banc). Neither case is directly on point. In *Sheppard*, the Third Circuit held that the Commonwealth could not serve as a *parens patriae* plaintiff where it *solely* sought monetary relief on behalf of its aggrieved, private-party citizens or residents. *Sheppard*, 520 F.2d at 22. In *Porter*, the Third Circuit simply decided that the *existence* of a private right of action did not prevent the state from bringing suit on behalf of citizens or residents as a *parens patriae* plaintiff. *Porter*, 659 F.2d at 318 n.16. The Third Circuit did not purport to decide whether the state could seek damages as a *parens patriae* plaintiff; indeed, the lawsuit in *Porter* was brought for injunctive relief only. *See id.* at 310.

Act ("CAFA") for diversity jurisdiction. *See* 28 U.S.C. § 1332.

But this sort of remedy-by-remedy reasoning is unusual and at odds with precedent in the majority of Circuits, which have held that a court should consider a complaint as a whole under CAFA. *See AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 394 (4th Cir. 2012); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 671 (9th Cir. 2012); *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 773 (7th Cir. 2011). *Contra Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir. 2008), *abrogated on other grounds by Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014). The court thus declines to accept the defendants' invitation to walk among the trees and lose sight of the forest.[4] The Commonwealth's complaint as a whole evinces an interest independent from that of individual consumers, and the Commonwealth thus meets the first requirement for *parens patriae* standing.

### 2. Quasi-Sovereign Interest

The Commonwealth meets the second requirement for *parens*

---

[4] *See generally Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even the same judge in a different case.").

*patriae* standing because it has alleged a proper quasi-sovereign interest in consumer protection.

As noted *supra*, the Commonwealth must meet two sub-requirements to properly allege a quasi-sovereign interest. First, the Commonwealth must articulate an interest in the "well-being of its residents in general."[5] *Snapp*, 458 U.S. at 607. Second, the Commonwealth must allege injury to a "sufficiently substantial segment of its population." *Id.* In short, the Commonwealth must allege the right type of interest and connect it to the right number of citizens.

First, consumer protection is the right *type* of interest. As far as we can ascertain, no court in the Third Circuit has directly addressed whether a state's interest in consumer protection is an interest in the "well-being of its residents in general." *Id.* However, there is a substantial body of out-of-circuit case law holding that consumer protection is a proper quasi-sovereign interest. *See Edmond v. Consumer Prot. Div. (In re Edmond)*, 934 F.2d 1304, 1311 (4th Cir. 1991); *District of Columbia v.*

---

[5] The Commonwealth's interest in not being discriminatorily denied its rightful status in the federal system is not implicated in this case. *See Snapp*, 458 U.S. at 607. Neither party argues that the Commonwealth has alleged this quasi-sovereign interest.

*JTH Tax LLC*, No. 22-3165, 2023 WL 130736, at \*3 (D.D.C. Jan. 9, 2023); *Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 456–57 (E.D. Va. 2019); *In re Standard and Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 404 (S.D.N.Y. 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2011 WL 560593, at \*5 (N.D. Cal. Feb. 15, 2011); *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1050 (C.D. Ill. 2009); *Hood ex rel. Mississippi. v. Microsoft Corp.*, 428 F. Supp. 2d 537, 545 (S.D. Miss. 2006); *New York ex rel. Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703, 705 (S.D.N.Y. 1982); *Kelley v. Carr*, 442 F. Supp. 346, 356–57 (W.D. Mich. 1977), *aff'd in part, rev'd in part on other grounds*, 691 F.2d 800 (6th Cir. 1980); *Massachusetts v. Bartel (In re Bartel)*, 403 B.R. 173, 175–76 (Bankr. D. Mass. 2009); *In re Taibbi*, 213 B.R. 261, 270–71 (Bankr. E.D.N.Y. 1997); *Colorado v. Trujillo (In re Trujillo)*, 135 B.R. 674, 675–76 (Bankr. D. Colo. 1992); *New York ex rel. Abrams v. DeFelice (In re DeFelice)*, 77 B.R. 376, 380 (Bankr. D. Conn. 1987); *Kelley v. Sclater (In re Sclater)*, 40 B.R. 594, 597 (Bankr. E.D. Mich. 1984); *New York v. Hemingway (In re Hemingway)*, 39 B.R. 619, 622 (Bankr. N.D.N.Y. 1983). We have found no case holding that consumer protection is not a proper

quasi-sovereign interest.[6]

The Commonwealth has also alleged a proper quasi-sovereign interest in consumer protection under the *Snapp* test. The Supreme Court in *Snapp* suggested that one "helpful indication" of whether a quasi-sovereign interest has been injured "is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Snapp*, 458 U.S. at 607. In this case, the Commonwealth has attempted to address injuries to consumer protection by passing the UTPCPL. Indeed, several other courts have applied the *Snapp* test to find that states with their own consumer protection statutes have a quasi-sovereign interest in consumer protection. *Microsoft Corp.*, 428 F. Supp. 2d at 546; *Illinois ex rel. Ryan v. Volpert (In*

---

[6] Several cases, however, have held *on other grounds* that a state lacked *parens patriae* standing to pursue consumer-related claims. In *New York v. Seneci*, 817 F.2d 1015 (2d Cir. 1987), the Second Circuit held that a state did not have *parens patriae* standing where it sued only for damages, as it was then effectively a nominal plaintiff for private properties. *See id.* at 1017. In *Pennsylvania ex rel Shapp v. Kleppe*, 533 F.2d 668 (D.C. Cir. 1976), the D.C. Circuit held that a state did not have *parens patriae* standing to sue a federal agency under federalism principles. *See id.* at 680. Similarly, in *Pennsylvania v. U.S. Dep't of Educ.*, 340 F. Supp. 3d 7 (D.D.C. 2018), a District of Columbia federal district court held that a state could not pursue a *parens patriae* suit where its quasi-sovereign interest in consumer protection overlapped with that of the federal government. *See id.* at 15.

*re Volpert)*, 175 B.R. 247, 257 (Bankr. N.D. Ill. 1994); *Taibbi*, 213 B.R. at 270; *Trujillo*, 135 B.R. at 675–76; *Sclater*, 40 B.R. at 596; *Hemingway*, 39 B.R. at 622.

Based on existing case law and the *Snapp* test, the court finds that the Commonwealth has alleged the right *type* of interest in consumer protection. *Snapp*, 458 U.S. at 607.

Second, the Commonwealth has connected this interest to the right *number* of citizens by alleging injury to a "sufficiently substantial segment of its population." *Id.*

Admittedly, the Commonwealth's complaint is fairly vague. The complaint does not expressly allege that Eagle Rock injured *Pennsylvania* consumers. *See, e.g.*, Compl. ¶ 58 (alleging that Eagle Rock deceives "consumers" in general), Doc. 1. But this is not fatal to the Commonwealth's *parens patriae* standing. At the motion to dismiss stage, the court is required to draw all reasonable inferences in favor of the non-moving party. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). We find it reasonable to infer that when the Commonwealth references "consumers" without qualification in its complaint, it is referring to at least *some* Pennsylvania consumers,

particularly in light of the subject matter of this suit—the purchase of real property within Pennsylvania. *See, e.g.*, Compl. ¶ 64 (noting that "consumers" filed complaints with the Commonwealth). Further, the bar is quite low for alleging injury to a "sufficiently substantial segment of a state's population." *See, e.g.*, *Taibbi*, 213 B.R. at 271 (sixty-four consumers); *Volpert*, 175 B.R. at 257 (fifty-five consumers); *DeFelice*, 77 B.R. at 381 (fifty-one consumers); *Hemingway*, 39 B.R. at 622 (finding *parens patriae* standing on the basis of injuries to *six* named consumers).

A state may also meet this numerosity requirement by alleging indirect injuries to its population at large from consumer protection violations. *See Snapp*, 458 U.S. at 607; *JTH Tax LLC*, 2023 WL 130736, at *5 (citing *SDS West Corp.*, 640 F. Supp. 2d at 1051); *Taibbi*, 213 B.R. at 271 (citing *Hemingway*, 39 B.R. at 622); *Volpert*, 175 B.R. at 257; *Trujillo*, 135 B.R. at 675. These cases all proceed along the same line of reasoning, holding that "the indirect benefits" of enforcing consumer protection law against "unscrupulous companies . . . [accrue] to the population at large." *SDS West Corp.*, 640 F. Supp. 2d at 1051. Accordingly, by alleging violations of consumer law occurring within its borders, the Commonwealth in this case has alleged injury to its

"population at large." *Id.* The Commonwealth has in this way connected its interest in consumer protection to "a sufficiently substantial segment of its population." *Snapp*, 458 U.S. at 607.

The court finds that the Commonwealth has alleged the right *type* of interest and connected it to the right *number* of citizens. The Commonwealth has thus properly alleged a quasi-sovereign interest and has met the second requirement to assert *parens patriae* standing.

Accordingly, we find that the Commonwealth has properly alleged that it has an independent interest in this litigation and that it has a recognizable quasi-sovereign interest in consumer protection, and therefore, it has standing to bring its claims.

### B. Applicable Statutes of Limitations

The defendants also move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), arguing that the Commonwealth's claims are time barred.

A court may dismiss a complaint as untimely only if the statute of limitations violation is "apparent on the face of the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). "[T]he time alleged in the statement of a claim [must show] that the cause of action has not been brought within the statute of limitations." *Id.*; *see also Jones v. Bock*, 549

U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Stephens v. Clash*, 796 F.3d 281, 288 (M.D. Pa. 2015) ("[I]f the pleading does not reveal when the limitations period began to run, then the statute of limitations cannot justify Rule 12 dismissal.") (internal quotation marks omitted).

In this case, the Commonwealth's complaint is generally phrased in the present tense. *See, e.g.*, Compl. ¶ 135 ("Eagle Rock does not inform customers about future development plans . . . ."). The dates of most of the alleged violations are not apparent on the face of the complaint. Although the defendants are correct in pointing out that the only three dates the Commonwealth "specifically pleads" occurred in 2016, these dates relate to only a small subset of the Commonwealth's claims.

Accordingly, we find that the Commonwealth's claims are not untimely on the face of the Complaint.

### C. Additional Documents Proffered by the Defendants

The defendants have proffered additional documents for the court's consideration in connection with their motion. These include: (a) an exemplar property report dated June 27, 2019, apparently intended for

disclosure to prospective buyers of land at Eagle Rock, Doc. 11-1; (b) a blank exemplar real estate sales contract, apparently intended for use in conveyance of land parcels at Eagle Rock, Doc. 11-2; (c) a blank exemplar property owner questionnaire, apparently intended for use in connection with the conveyance of land parcels at Eagle Rock, Doc. 11-3; and (d) a blank exemplar closing disclosure, apparently intended for use in connection with the conveyance of land parcels at Eagle Rock, Doc. 11-4.

The Third Circuit has held that a "document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and brackets omitted). The key question in this analysis is whether the claims in the complaint are "based on" the document. *Id.* Such a document must also be "undisputedly authentic." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993).

The Commonwealth's allegations in this case concern misrepresentations made during sales pitches to prospective buyers. *See* Compl. ¶¶ 1–10. These claims are not "based on" any written document. Thus, the documents proffered by the documents are neither integral to

nor explicitly relied upon in the complaint.

Accordingly, the proffered documents will be excluded from consideration in connection with this motion. *See* Fed. R. Civ. P. 15(d).

### D. Failure to State a Claim

The defendants also move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), advancing various arguments that the Commonwealth has failed to state a claim upon which relief can be granted under ILSA, the CFPA, or the UTPCPL.

But we begin and end with one reason why the Commonwealth has simply failed to plead any plausible claims in its complaint. Although the complaint provides substantial detail about the Commonwealth's legal theories and the general background and nature of the defendant's allegedly deceptive scheme and methods, it fails to allege any facts whatsoever about any particular lots, any particular consumers, any particular transactions, any particular communications, or any particular actions by particular agents of the various corporate defendants. Although verbose, the complaint ultimately rests on a foundation of conclusory factual allegations.

While a complaint need not catalogue every fact within a plaintiff's

knowledge to state a claim, it must nevertheless allege enough *actual facts* to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Moreover, to the extent the Commonwealth's UTPCPL claims are based on fraudulent misrepresentations, it has failed to plead these claims with the heightened particularity required by Fed. R. Civ. P. 9(b). *See Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 484–85 (E.D. Pa. 2016). The Commonwealth's complaint does neither.

Accordingly, the defendants' motion to dismiss will be granted in part and denied in part. To the extent it seeks dismissal under Fed. R. Civ. P. 12(b)(1) for lack of standing, the motion will be denied. To the extent it seeks dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, it will be granted. The complaint will be dismissed without prejudice for failure to state a claim upon which relief can be granted, and the plaintiff will be granted leave to file an amended complaint within thirty days.

An appropriate order follows.

Dated: March 31, 2026                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge

- 23 -